Good morning, Your Honors. I'd like to reserve five minutes of my time for rebuttal, if possible. Your Honors, the government knew for a year and a half that Brown, White, and Osborne was representing Dr. Ho and Hannah Dinn before it's filed its motion to disqualify Brown, White, and Osborne. It knew for over eight months all of the facts that gave rise to its motion with regards to Hannah Dinn and Dr. Ho before filing that motion. This timeline smells of the gamesmanship that the Supreme Court warned against in its Wheat decision. In our adversary system, lawyers don't get to pick their opponents. Let me say this, counsel. I appreciate the timing issues you talk about, but you struggle under the burden of the Bauman case, which is our seminal case about who gets mandamus. One of the requirements under that, indeed the principal requirement, is that you have to be able to show basically that the trial court, district court, just completely blew it here, just got the law all wrong. As I looked at your evidence here, I can see where a trial judge could rule differently, but I can also see where the trial judge could find that in certain circumstances that the lawyers in this case could not adequately cross-examine one of the parties and therefore concluded that it was inappropriate. If that's correct, don't you lose under Bauman? I think there are two answers to that, Your Honor. The first is there's a legal issue as to what standard applies under the third Bauman factor. I do not take Your Honor's question to be getting to that at this moment. I take Your Honor's question to be getting to if the traditional standard applies, if the traditional clear error standard applies. Your Honor, forgive me. That probably wasn't articulate. I really am referring to the third prong of Bauman because that's really what you've got to overcome. Even if we have great empathy for your position, your client's position, we have to uphold the district court here unless it's just a complete swing and a miss, basically. Isn't that right? No. Okay. But let me explain why. I'm going to explain why in two ways. The first is that there was a swing and a miss, so I'm going to take on Your Honor's question very directly there. Okay. The second, I'm going to explain why the lower Bauman standard under the third factor should be applied in this type of case. So here's why there's a swing and a miss. I would focus on two things. One is that the record shows that it's just not credible that the United States of America intends to call Hannah Dinn as a witness. It is not. Isn't that speculation on your part? Or is there anything in the record where the government has said we will not call this person? No, Your Honor. There's nothing in the record where they say that. However, Your Honor, in the United States v. Wheat decision, the Supreme Court says that district courts are required to gaze behind any stated basis for a conflict to determine whether or not that stated basis is manufactured. If all a district court has to do, and make no mistake, that is all this district court did, is rely on the representation of the government that intends to call someone as a witness, the government will be able to manufacture a conflict of interest whenever it wants. Wheat presumes that the court will peer beyond that stated interest and examine the record. Let me make sure I understand your position correctly. You're saying if the government says we're going to call X as a witness, you're saying that the court has to say, I'm not so sure whether the government's going to do that. So I want to find out whether that's really true. Would the government conduct, I mean, would the court conduct some kind of discovery? How would the district court determine beyond what the district court was told by counsel  I think that the evidence would look similar to the evidence we presented here. It would look to what the government did that would suggest that it intended to call the individual as a witness. In fact, the Turner decision that I cite from the Seventh Circuit does just that. It takes the government's stated position and it contrasts that to what its actions show. Okay, but that's in a situation where, if I recall correctly, the government actually had done something different that showed the duplicity of its position. I'm not seeing that in this case. There's a statement that they're going to call, but I haven't seen anything in the record that contradicts that. Am I missing something? Well, again, Your Honor, I would say that by the Supreme Court saying that you have to look out for manufactured conflicts, you can't just give the ball to the government if they say, trust us, we intend to call this person. You have to look beyond that. But I mean, taking Turner, something that was previously done or said by the government, which the district court could look at and say, you know, you said this, but you also did that. And I'm looking for something in this case where the government has said we're going to do X, but they've previously done something that's directly contradictory. We don't have that here, do we? I disagree. And here's why I disagree, Your Honor. It's because if you look at the – I would point to the timing issue that I spoke about a moment ago. I would point to a second timing issue that it took over 10 months for them to approach Hannah Dinn about testifying after they charged her. That was after they filed the disqualification motion,  and after they named her per the court's order as a potential witness in the case. They literally talked to her about testifying after naming her as a witness. That is putting the cart before the horse. And then I think the biggest thing here that I would really point to is the fact that the government doesn't just get to call Hannah Dinn the way it would anyone else. Hannah Dinn has a Fifth Amendment right against self-incrimination here.  to invoke that right. The government has a way to compel her testimony over that invocation, but that way involves, one, getting internal approval, where the Department of Justice has to examine fully the value of her testimony. And I take it that the reason why the Department of Justice must extend it per its policy is based off of 18 U.S.C. 6003, which is the statute that requires a motion to the district court to overcome someone's invocation of their Fifth Amendment right and give them immunity. And that statute requires the government to explain that the testimony may be necessary for the public interest. So there's this process here that they have not done. And it is 100% in their hands to do that. Now, I understand they say that the reason why they haven't done it yet is that we are so far from trial, and they give various other explanations. But the problem with that is that it's a very streamlined process. And when you contrast, based off of their own characterization of it, and when you contrast how streamlined that process is against the binders of work and hours of oral argument and numerous hearings and rounds and rounds and rounds of briefing that this qualification motion has engendered, it really doesn't make sense why they wouldn't have done the easier thing, the thing they would have to do anyway if they intended to call her first. I think it should, frankly, this is the thing that makes me mad. Can I just stop you and ask one question? Yes. Let's say, arguendo, that the government does go through the process and determines to grant immunity so that you can get around the Fifth Amendment invocation. Doesn't that mean that you lose on the violent factor? No. Why not? Well, we have to look at where the adversity is here. And the government bears the burden of showing where the conflict is. So let's go to where they say that this conflict is. First, they say that there's a conflict because we would not be able to cross-examine her about her flight that was the basis of the obstruction of justice enhancement that she received in sentencing. We were representing her for a limited purpose during that flight. The problem with that is because she received that enhancement and the way the rules work in evidence in terms of how you can impeach somebody for an act of dishonesty, the fact that she received that enhancement is all that we or any other lawyer would be able to get into there. Ms. Fenton, you received an enhancement for obstruction of justice because of your flight, didn't you, in this case? Yes. That's all anyone would be allowed to get into, and that is in the public record for anyone to view. There's no secret knowledge with that type of question. The next—oh, sorry, Your Honor. I was going to say you're getting close to your five minutes if you want to save time. It's up to you. I would like to save time if I can. Very well. Thank you. I'll give you a chance to respond. Okay, good. All right, let's hear from the United States. Ms. Bateman, right? Yes, Your Honor. Good morning, and may it please the Court. Samantha Bateman, appearing for the United States, and I'm joined at council table by AUSA Roger Shea, who's one of the trial attorneys prosecuting this case. Your Honors, the drastic remedy of mandamus is not warranted here because the district court did not clearly or indisputably err. In light of the Sixth Amendment and relevant ethics rules, and to avoid being whipsawed later on down the line by a possible 2255 motion, the government had an interest in bringing potential defense conflicts to the district court's attention, and that court had an obligation to examine them. Counsel, let me ask you, what's the standard of review here for disqualification of counsel? Is it abuse of discretion on the part of the trial court, or is it a higher standard? On direct appeal, it would be abuse of discretion. In this case, however, as Your Honor has pointed out, we're in a mandamus posture, and so Bauman's third factor controls. And Ninth Circuit law is very clear that mandamus is an extraordinary writ. It's only something that should be exercised if the district court has totally abused its authority. What I mean by that in terms of the standard, when we look back at what the trial court did, do we review what the trial court did in terms of the trial court having a very broad abuse of discretion standard, or is it a higher standard that we review to determine whether the third Bauman factor has been met? I think Your Honor put it pretty well when you said you had to find that the district court just totally whiffed or swung and missed. It's really a sort of doubly deferential standard, similar to how you might have in an EDPA case with a Strickland ineffective assistance of counsel claim. You've got stacked layers of deference here. One is the typical abuse of discretion review that would apply if this were in a direct appeal posture, and then you have the recognition that this case is in a mandamus posture. So under Bauman's third factor, this court would have to be firmly convinced, as the cases say, that the district court clearly and indisputably erred. It's the kind of thing where any reasonable jurist would look at this and think, wow, this district court just clearly was out to lunch or missed something key and important. And that's not what we have here. I understand that there can be arguments made on both sides, and my colleagues representing Petitioner Ho have made able arguments on behalf of their client, but this is not something where any reasonable jurist would look at this record and conclude that the district court had erred. This district judge presided over not just this case, but also accepted Hannah Dinh's guilty plea. He's presiding over the scheduled trial against Anthony Dinh. He's very familiar with the facts and circumstances here, has been a district judge for several decades and a state court judge before that, and applied all of that experience in determining that, just as the government said, the government was likely to call Hannah Dinh as a witness because she has relevant testimony to offer. If the government decides not to call Hannah, does that impact your analysis? I think if there were some change in circumstances that justified the government not calling her, like if there were a stipulation breach that then obviated the need for her testimony, that wouldn't change the analysis. I am standing here, though, saying today on behalf of the government that barring some totally unforeseen change in circumstances, the government plans to call Hannah, and the government represented that to the trial court, put her on its witness list, so it's not like the trial court did nothing to examine. I follow you. And would it matter if you make that decision in trial? I mean, that happens all the time. The government decides we don't need that witness in light of how the trial actually went. Would that matter? No, I don't think that would necessarily change the analysis here. The courts have been clear, and I think Stites says this, that what the court has to do is examine whether at the time of the disqualification motion the witness is a probable witness, and that's why Wheat speaks about the potential for a conflict of interest to arise. So, right, if something changes at the 11th hour or there's some unforeseen circumstance or the government simply concludes that it doesn't need the witness during the trial and the district judge wants to move the case along and she's not ultimately called as a witness, that doesn't mean that the government was insincere in expressing its original desire to call her and putting her on its witness list. And that's what we have here. The government has said that it absolutely intends to call her barring some unforeseen change in circumstances, and the district judge required the government to even go so far as to submit a preliminary witness list. So the government put her on its witness list, and you're right, my opponent is correct that we haven't subpoenaed her yet or sought to compel her testimony because we're just not there yet. This trial is still nearly two months away and applying for statutory immunity, which is a process that can be completed in a relatively streamlined fashion, but it's a last resort. There are a lot of things that we would want to do before that. First is determine... Is it not that if you don't pursue this and Dr. Ho is convicted, then it's not going to be BWO. BWO is not going to be counsel anymore. There's going to be another lawyer who's going to be saying BWO was ineffective. Dr. Ho come in and say, I didn't know what I was signing, I didn't know what the waiver was. In fact, my lawyer lied to me about the impact of the waiver. I mean, you've seen that scenario before. I've been on the bench several decades as well, and I have certainly seen that. I think that's exactly right, Your Honor. And that's exactly what the Supreme Court said in Wheat as well. And that's the reason that district judges are empowered with such broad discretion to refuse even attempted waivers of these conflicts of interest because the conflict doesn't go away when the defendant attempts to waive it. Later on down the line, if there's a conviction and a direct appeal or a later collateral attack on a 2255 habeas type motion, it often comes back to haunt the government and the district court where there's an allegation that the representation was conflicted. And that's all the government was trying to do here. This sincerely was not a ploy to try to disqualify BWO. It was in recognition of the fact that we were all put in this awkward situation where BWO represented not just these two individuals we've been talking about, but approximately a dozen individuals who were involved in this case. Two of them were then charged, and one of them is going to be a witness against the other at trial. And I do want to point out, I simply disagree that BWO could cross-examine Hannah Dinn without giving rise to some kind of conflict. First, as the district court found, there's the substantial likelihood that there's some kind of confidential attorney-client-privileged information that could have flowed from Hannah Dinn to BWO and that would be helpful in Petitioner Ho's defense at trial, but that they simply can't use because of continuing duties of loyalty to her. But in addition, simply attacking her without the fact that she had an obstruction of justice enhancement, when they were the attorneys who represented her during her flight from prosecution, would necessarily give rise to some kind of conflict. If they asked a question about, didn't you get an obstruction of justice enhancement because you fled to Vietnam? She could start answering by, and yeah, you were my lawyers at that time, which puts everybody in the courtroom, including the district judge, in a very, very awkward situation. Was there any discussion before the district court about a potential IAC claim against BDO in this particular case? Well, the government did reference that the reason that it brought this motion, and this was during the hearing, was that it needed to make sure that she had, or that Petitioner Ho had unconflicted counsel because there might be a later allegation of ineffective assistance of counsel down the line. We've all seen, particularly with 2054 kinds of cases, IAC is almost a standard comeback. I think that's right. And it would not even be a totally implausible argument to make. And the government, I think, would actually be hard-pressed to figure out how to respond to a 2255 motion in a situation like this, where we have a law firm that is representing a defendant and then faced with cross-examining one of its former clients. There really is no way to conduct that trial in a way that at least doesn't give rise to some kind of appearance of impropriety. And I think the courts have recognized that it's not just the actual conflict, it's the potential for a conflict that is a concern, and the district judge is well within his discretion to determine that that's just not something that he was willing to risk. And Wheat says that the district... I'm sorry, go ahead. Please, go ahead. Well, your opposing counsel's argument is largely that the government's insincere, and this is really a ploy to take away Dr. Ho's counsel of choice, and they offer several reasons for that, timing, et cetera, that the government has not taken the steps to immunize Hannah Dent's testimony or to compel her to testify. And I found in your brief, in a footnote, an argument that seemed significant to me but seems to have been buried by the parties. I didn't see a response in the reply brief. I haven't heard anybody talk about this. But the government averred that if they did those things, if they took those steps and started to compel testimony and were preparing for trial, then if Dr. Ho at some point decided to plead guilty, he wouldn't be eligible for a three-point reduction for cooperation. Is that... This is an odd way of asking you that, but is that something, is that a legitimate reason we should consider that the government would not take these steps because they're protecting the defendant's ability to get a lower sentence? I do think, yes, the court can take that into account because their argument is that the timing shows that the government was insincere in some way. All we're attempting to do is explain the timeline here was driven by there were plea negotiations ongoing and there was a deadline that the government had set at the end of December in 2023. Where after that point, the government was going to prepare for trial, which was then scheduled for February of 2024, if the defendant had not either accepted a guilty plea or the trial date was continued. Now, ultimately, because BWO asked for a plea offer, asked for the government not to begin trial preparations, and then asked for the trial date to be continued at that point until June of 2023, that's why the government didn't yet begin preparing for trial. And now we have a situation where there's new counsel, the government is engaged in active plea discussions with that new attorney. And again, there has not yet been a three-point acceptance of responsibility reduction deadline set because we're still hoping to potentially be able to resolve this case, although it would be, of course, helpful to have some kind of guidance from this court about which attorney should be representing him for purposes of any potential change of plea hearing. But all of this is just to say that that's part of the reason that the government has not yet begun preparing for trial. In addition to conserving its own resources, we have a policy of taking away that third point once the government begins active trial preparations. And at the point where we have to start prepping witnesses, cutting trial subpoenas, or petitioning internally and asking the DAG to approve an application for statutory immunity, those are trial preparations, and those would necessarily disqualify him from receiving that third point. Is that a policy in the U.S. Attorney's Manual or just an internal policy for your office? That, I think, is just an internal policy. And then the immunity application, the policies are actually in the Justice Manual and are driven by statutory considerations as well. I believe 18 U.S.C. 6002 and 6003, as my colleague referenced. But all of this is just to say that the government hasn't prepared for trial yet because trial isn't imminent and a number of things may happen that would obviate the need for trial or for statutory immunity application. The government could either reach a plea agreement with Petitioner Ho, or the government could reach an agreement with Hannah Dinn and her counsel, whereby she could accept letter immunity or pocket immunity, which would obviate the need to go through the process of applying for statutory immunity. So those are the only reasons why we haven't done those types of things because we're just not at that point yet. But the government did raise this conflicts issue because it wanted to give the district court enough time to consider it and to think about how to proceed and whether the case could go forward for either a trial or a change of plea hearing with BWO representing Petitioner Ho. I think the district judge carefully considered the evidence in the record. He held several hearings, received briefing, accepted supplemental briefing, asked the district court to provide a witness list. The district court then exercised its considerable discretion on the basis of the government's representations in that witness list to disqualify BWO. Some people might disagree with that assessment, but it wasn't clearly and indisputably wrong, which is the standard that this court would have to apply. And I do want to touch on, just briefly, my colleague alluded to there are some cases where this court has reviewed a mandamus petition under a lesser standard than clear error, but they're very unusual circumstances that involve some kind of legal question, a pure question of law, usually statutory construction, where this court is, as an appellate court, not uniquely in a position to opine on those sorts of issues, and if there weren't a decision before, then the court might render one now. But this is not a situation like that. This is a fact-bound dispute about the likelihood that a potential witness will be called at trial. The trial court is in the best position to analyze that, and that's what the district court did here. If there are no further questions...  We respectfully ask the petition be denied. Thank you. Thank you, Your Honors. All right. Mr. Nolan, you have some time. Thank you, Your Honors. If it's okay, I'd like to immediately address the third-level issue that was brought up. The idea that such a preliminary step of even seeing whether they can cut a subpoena for Hannah Dinn to testify as being something that would lose Dr. Ho the potential third level if he were to plead guilty is preposterous. This court sees all the time in reviews on sentences defendants who have pled guilty the week before trial and got that third level, or two weeks before trial and got that third level. In all of those cases, every single one of them, subpoenas would have been cut for testimony well in advance of those guilty pleas. Let me ask you this. You heard the discussion about IAC claims. We, particularly in 22, 55, 54, and these kinds of cases, if the defendant or defendants are found guilty, they almost always will make ineffective assistance of counsel claims. By severing counsel, in this case, from this one particular potential witness, doesn't that simply recognize the possibility that an IAC claim could be made and it's less messy when they're representing everybody, basically? I think my response to that, Your Honor, is that constitutional rights are messy. This court sees numerous ineffective assistance of counsel claims all the time. Rarely do they end up being granted, but they are entertained because of the important constitutional right at issue there. Similarly, but that important constitutional right to effective assistance of counsel should not vitiate the other Sixth Amendment right that a defendant has, which is to the counsel of their choice. The court just has to do the work twice, and I understand the messiness of that, but appreciating that right means that there will be these situations. Now, here's why I do not believe that an ineffective assistance of counsel claim is something to worry about in this case based off of what was going on, based off of the proffered desires to have Hannah Dent testify at Dr. Ho's trial. We got to one of those earlier, the flight. Another is the fact that she would be testifying to something that is already substantiated by business records. These aren't business records that are her own business records. These are records that were submitted to financial institutions, to the United States government. What's on them, the truth of what's on them might be disputed, but they don't relate to Dr. Ho's case. She would be testifying about what's physically on those forms, and that can't really be disputed based off of the fact that those were forms submitted to the United States government and to the financial institutions. I would also like to add that one of the things where I think we skipped over in Hannah Dent testifying, we talked about whether the government wants to call her, but we haven't really spent as much time talking about whether the government can call her. And I think we just heard something very, very important a moment ago, and that was that the government still, to this day, hasn't gotten internal authority to call Hannah Dent. Now, during the trial disqualification hearing, and this is within the excerpts of record, that process was discussed as being so streamlined that it could be done with a phone call. We would not, it's possible we might not even be here today, that there might not have even needed to have been any hearing on this if the government had simply taken the time to do the phone call. To them, Dr. Ho's Sixth Amendment right to the counsel of his choice is not worth a phone call. That is important for several reasons, the first of which is that it shows a lack of serious intent to call Hannah Dent. They haven't made the effort to get the authority because they know they can't get it given the standard for compelling someone's Fifth Amendment right to testify. It also goes to alternatives that the district court, Your Honor, mentioned earlier. Swing and a miss is right. Here's a swing and a miss. We specifically identified an alternative. Wait to see if the government gets this streamlined authority before deciding whether or not to disqualify us. To limit Dr. Ho's Sixth Amendment right, read the order as many times as you want. It's not analyzed once in there. Is there something in the record that says that this witness wants this law firm? Yes. And where is it in the record? That would be within our engagement letters which are submitted under seal. They include the conflict of interest waivers. Why does the law firm care so much that it continues to be involved representing her? Who's her? No, no, I'm just saying it's unusual to have a law firm saying we really, really, really, really want to represent this person. And for her to say we really, really, really want them to represent me. I haven't seen her side. I'm asking why does the law firm care so much? There are lots of lawyers out there. There are lots of public defenders even. Fair. Why? I think this goes to, it's kind of a personal question. It requires a personal answer, so that's why I'm going to guess. If that's all it is, then that's fine. Well, no, I think it, I would like to give it, if that's okay. Sure. I'm a former assistant United States attorney. I proudly served as one for six years. I think the department is something that, it's something I revere. Two of my colleagues on this case also served as assistant United States attorneys. Neither of us have any doubt that there is about the lack of intent of calling Hannah Dinn. She's simply too risky and offers too little value for that to be, for that to be entertained by any serious, confident, or even rational prosecutor. That's why we're so obsessed. I respect the answer. Thank you. Thank you. All right. Any other questions about my colleague? Thanks to all counsel for this, their argument in this case. The case just argued is submitted, and the court stands adjourned for the day, but as I mentioned before, we'll be coming out after we finish our conference, to visit with the clerks and externs, and in the meantime, the court will go into conference, and thank you all for your argument. Thank you, Your Honors. All rise. This court for this session stands adjourned.
judges: SMITH, BADE, Fitzwater